## Case No. 3,453.
### CRUDER v. PHILADELPHIA INS. CO.
[2 Wash. C. C. 262.] [1]

Circuit Court, D. Pennsylvania.   Oct. Term, 1808.

MARINE INSURANCE—DEVIATION—UNSEAWORTHINESS.

Insurance on the Jefferson, at and from St. Lucia to New-York, with liberty to touch and trade at St. Kitt's. The vessel, having lost some of her men at St. Lucia, went into St. Bartholomew's to supply the loss, and sustained an injury on her return voyage, she being run foul of by another vessel, the damages from which exceeded fifty per cent. The underwriters claimed to be discharged, on the ground of deviation, and sailing from St. Lucia without being sufficiently manned, which was unseaworthiness. If the accident happen whilst the property is at the risk of the underwriters, and cannot be repaired at the port of departure, the vessel may go to the nearest port for that purpose; and she continues in the same situation as to the insurance, as if she had been repaired at the port of departure. The insured are bound to prove, that it was necessary to proceed to another port, and that the vessel went to the nearest port, at which her wants could be supplied.

Insurance was effected, on the 17th November 1803, on goods on board the Jefferson, at and from St. Lucia to New-York, with liberty to touch and trade at St. Kitt's, declared to be on eighty hogsheads of sugar. The vessel having lost her mate and two mariners at St. Lucia, sailed to St. Bartholomew's, in order to procure a supply of men, on the 12th of October. She arrived there on the 18th, and, the next day, sailed on her voyage for New York. The captain, in his deposition, states, that he went to St. Bartholomew's, as the most likely place to get seamen, and because the port charges were lower there than at any of the English islands; that she could not, without such supply, have proceeded on her voyage to New-York, although, with the assistance of a passenger going to St. Bartholomew's, who worked his passage thither, she was sufficiently manned to go there. Being asked if the same end could not have been answered by going to St. Kitt's, he answered, that he could not determine as to that, as the wind would not have permitted him to fetch St. Kitt's, if he had been so disposed. On the voyage from St. Bartholomew's, she was run foul of by another vessel, and so much injured, that the crew abandoned her, and got on board a vessel then near. Part of the crew went on board the disabled vessel for water, and were by a storm pre-

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

vented from returning. They however brought her safely to New-York, with considerable injury to the cargo, which, with salvage, exceeded fifty per cent. A regular abandonment was made, and refused.

The objections to the recovery, made by Mr. Rawle, for defendants, were—First; that the calling at St. Bartholomew's was a deviation. Second; if not so, then, sailing without being sufficiently manned discharged the underwriters, on the ground of want of seaworthiness. Third; if it should be contended that the voyage began at St. Bartholomew's, then it was a different voyage from the one insured. He cited Park, 229.

Mr. Ingersoll, for plaintiff, insisted that the calling at St. Bartholomew's was from necessity; and that the going there to get a supply of seamen, did not expose the vessel to a charge of want of seaworthiness. He cited Park, 300, 305, 309.

WASHINGTON, Circuit Justice (charging jury). The question is, whether the calling at St. Bartholomew's amounted to a deviation. It is admitted, that if an accident had befallen the vessel on her voyage, the deviation, with a view to repair the loss, would have justified the act; but it is contended, by the counsel for the defendants, that if the accident happen before the inception of the voyage, it exposes the vessel to the objection of want of seaworthiness, if she break ground in that situation. The rule seems to be, that if the accident happen whilst the property is at the risk of the underwriters, and cannot be repaired at the port of her departure, she may, without prejudice to the insurance, go to the nearest port where the damage may be repaired; and that, in doing so, she stands in the same situation as if she had repaired at the place of departure. This principle is laid down in the case of Motteux v. London Assur. Co. [1 Atk. 544], and seems to be perfectly reasonable. If the vessel is injured in port, (being insured at and from that port, as in this case,) and she cannot be repaired there, to say that she should not be at liberty to go to the nearest port where she can be repaired, is to say that the voyage never shall commence; or, if it do, that the underwriters shall be discharged, although the accident happened whilst she was protected by the policy. It is for the benefit of all concerned, that the steps should be taken. But, in all these cases, it should appear fully to the satisfaction of the jury, that the measure was necessary; and this it is incumbent on the plaintiff to show, if he would excuse the deviation. The only witness, as to this part of the subject, is the captain, who states, that he went to St. Bartholomew's because he thought it more likely that he should complete his crew there, and that the port charges were lower. But he does not state, that he could not have got his crew at another port; and as to the port charges, this was no concern of the defendants, and therefore no excuse. Being asked, if he could not as well have got them at St. Kitt's, he answers that it was not in his power to determine the question, because, as the wind was, he could not have gone to St. Kitt's, if he had been so disposed. If he refers to the state of the wind when he left St. Lucia, he might have waited till it was more favourable; if he means, when he was off St. Kitt's, the observation would not apply. But one thing is obvious, that whether he could or could not have got to St. Kitt's, he never, from the moment he broke ground, intended to go there. It is unfortunate that the map offered in evidence by the defendants' counsel in his summing up, (and which, to preserve regularity in trials, we thought it improper to introduce at that stage of the cause,) had not been sooner offered. However, it is not incumbent on the defendants to show that the vessel did not go to the nearest place to get a crew; the plaintiff should satisfy you that St. Bartholomew's was the nearest port at which his wants could be supplied; and unless you can be thus satisfied, you ought to find for the defendants.

The jury could not agree, and the parties consented to withdraw one, and continue the cause.

[NOTE. For the charge to the jury upon the new trial, see the next preceding case, No. 3,452.]